We will proceed to United States of America v. Eugene Jackson. And we will begin with Mr. Adler. Thank you, Your Honor. May it please the court, Andrew Adler from the Federal Defender's Office on behalf of Eugene Jackson. I'm happy to focus today on the court's written question to the parties, but I thought I'd begin just by emphasizing why this case is on an even for two reasons. One, there is no question in this case that Ioffe DuPain exists because both the federal government and the Florida government have expressly exempted that from their controlled substances. And second, there can be no argument that this case involves an overlooked reason or argument because at the time of Travis Smith in 2014, Ioffe DuPain remained a controlled substance at that time. So to Judge Carnes' earlier point, this is the opposite of Groundhog Day. This is when Bill Murray wakes up on February 3rd and discovers a new change of law that gives rise to a brand new argument, and he now has a new reason to live. So that places our case on an even stronger footing. Now, as to this court's written question to the parties, it really boils down to this. What are we comparing the elements of Mr. Jackson's prior cocaine offenses to under federal law? Are we comparing them to the federal controlled substances schedule at the time of his prior offenses? And as we explained in our 28Js from last week, three circuits have addressed this question exactly, and they've all reached the same conclusion, that you've got to look at the federal schedule at the time of sentencing. And so to make a few quick points about why we think those circuits are correct and should be followed here. First, whether you're talking about the guidelines or you're talking about a statutory penalty like ACCA, the default rule is that sentencing courts apply federal law, in effect, at the time of sentencing. Congress can deviate from that, but it's got to be clear if it wants to do so. Second, in this particular definition, 924E2A2, Congress expressly incorporated a federal drug schedule that is constantly evolving and changing by its very nature. And so if we then contrast that with other related definitions in the code, we see that Congress has done something very different where they're tying the definition to a statute of conviction or a penalty provision, things that are locked in at the time. And Congress did not do that in 924E2A2. And we think that choice has to be given meaning. And then the final point is just a common sense point. If Congress wanted federal sentencing courts to impose 15-year mandatory minimums based on substances that are now totally legal under federal law, we would have expected Congress to have spoken loudly and clearly had it done so. It just did not here. And so... You know, that kind of argument cuts both ways. The argument could come back, well, if Congress didn't intend this, we would expect them to say that. That, you know, Congress could have said either way, truth be known, they probably didn't even think about it. Well, that may be your honor. But then we've got two things we've got to look at. We've got the default rule, which is that you apply federal law at the time of sentencing. That's the current rule that Congress was legislating against. So I think the presumption there cuts in our favor. And then we have this choice to incorporate a schedule that is always changing and evolving. And so it just doesn't seem to make sense for Congress to want to lock in a superseded, outdated schedule. If they wanted to do that, they would have drafted a completely different definition that locked in old law. And that's just not what it did here. You want to address the McNeil case? Yes, of course, your honor. So the three circuits that we cited... Yes, so the three circuits that decisions that we cited all address McNeil, and all reach the same conclusion about what it says and what it doesn't say. What it does say is that we've got to look at the law in effect at the time of the prior conviction to determine what the statutory maximum was for that prior conviction, as well as what the elements were for that prior conviction. That makes sense, because that was the law in effect at the time the prior occurred. But what McNeil does not say, and all three circuits are very clear about this, is McNeil does not say, what is the federal comparator? What are we going to compare those elements to under federal law? And we know McNeil didn't address that, because if you actually look at McNeil, it doesn't even quote the part of the statute in 924E2A2 that we're dealing with here. It doesn't even quote the as defined in parenthetical. There's an ellipsis where it cuts it out, and then there's a quote where it cuts it short. So there's just no way that McNeil could have extended to that issue. So that's why I think all three circuits have looked at this and reached the same conclusion in that respect. So the government, I think, in its responses in the 28Js, were referring, I think, the only cases it cites are immigration cases. So we tried to explain why those cases are distinguishable. And it's just a very different context, because in the immigration context, the consequences of the prior conviction attach at the time of the prior. So that's why defense lawyers are constitutionally required to advise clients at the time of the drug offense about the immigration consequences that that's going to have. Yet that same defense lawyer advising that same client is not required to advise about some future consequences for some future federal crime that has not yet occurred. That's what this court said in McCarthy in 2003. So I just don't think those immigration cases really carry much weight in the context of a sentencing enhancement. So we don't really have much else to add about McNeil. You know, if the court thinks McNeil is controlling and the government is correct about that, then, you know, I think the court's going to be breaking with three circuits. I mean, the only other thing the government said about that was that those three circuits were guidelines cases. And I just think that's a distinction without a difference, because in fact, we think that even cuts in our favor. Because if you look at the controlled substance definition in 4B1.2b, it doesn't even incorporate the federal controlled substance. Your argument on McNeil is that the backward look that Justice Thomas wrote in McNeil is a backward look as to what the state established, state law established, as opposed to a backward look on what the federal requirements were at the time. And the reason that that should be true, the reason that the three circuits are correct, you would say, you don't have to, but it helps your argument if you can, is that is good law because what? Well, well, we look on the state statute, but on the state statute, but not a backward look on the federal. Right. So that is exactly our position. Because when you're looking at the state prior, it's a previous conviction that already happened. So we have to look at what the law was at the time that it happened. That makes sense. But now on the second half of the analysis, we're not asking what the law was at the time of the prior, we're now asking, we have to compare those elements of the state offense to federal, something in federal law. And so we have to decide whether it's current federal law, or it's outdated, over superseded federal law. And our position is that there's this default general rule that sentencing courts always look to current federal law at sentencing, unless there's an ex post facto problem or Congress says otherwise. And that's especially true in this context, where Congress is expressly incorporating a drug schedule that it knows by its very nature is always being updated, it's always changing. So that's why we think that you've got to look at federal law sentencing courts always do at the time of sentencing, even though at the same time, at the first part of the analysis, when it comes to the state priors elements, we're looking at state law at the time of the prior, I don't think there's any inconsistency there at all. It's just two different parts of the analysis. And we're governed by, you know, one is the state law part, and one is the federal law part. What what would your position be if the state statute had not changed, but the federal statute had changed in the opposite direction? In other words, the state statute had an element that the federal statute didn't have. And the defendant commits the crimes under state law. And then by the time he commits the 922, the federal law has changed to broaden and include what the state statute has always included. So if I'm understanding, I think that that would qualify under ACCA, because you're looking, you're still looking at federal law at the time of federal sentences or at the time of the 922g offense. So it can cut both ways. And the example that we tried to give in our 28j was was a real life example involving bath salts, where Florida got there before the federal government did, and it regulated bath salts first. And so our position is that somebody in Florida who commits a bath salt, you know, before the feds can regulate that, and then later on commits 922g offense, that under the government's position that that bath salt Florida crime would not qualify under ACCA. And if you're faced between that scenario, and the scenario that you have here, where you know, you're imposing a 15 year mandatory minimum based on a substance that's now totally legal, we think that the choice on that is pretty clear. And I assume implicit in your position is it doesn't matter why the substance is now legal. Of course, Your Honor, that has no relevance under the categorical approach. And, you know, it may be a counterintuitive result, as we sometimes find in the world of the categorical approach. But, you know, our position is that the law requires what the law requires. Thank you. Thank you, counsel. All right, Mr. Brenner. Good morning, Your Honors. May it please the Court, Michael Brenner on behalf of the United States. I want to start where we left off with McNeil. McNeil says the entire inquiry is a backward looking inquiry. In the quote that Jackson just talked about, in defining what the backward looking inquiry is, the Supreme Court includes the controlled substance. And for good reason, we're looking back on previous convictions to determine whether the defendant has demonstrated their dangerousness by doing something that is criminal under both state and federal law. I'm sorry to interrupt, but the offense that we're talking about, it's a little confusing, right? Because we've got predicate offenses, which obviously we have to talk about. But then we have the instant offense, which is the felon in possession offense. And so the definition for incorporates what the definition of a controlled substance is. And so, I mean, I'm not even sure whether it should be sentencing or at the time of the offense, but it seems like there might be a notice problem if, and here it doesn't make a difference, right? Because the law changed before the felon in possession offense occurred. So it seems like there might be a notice problem because the time that he committed the felon in possession offense, the prior crime would not have qualified under the felon in possession statute. Do you understand what I'm saying? Or the definition of serious drug offense under that statute? Why isn't there a notice problem Well, let's be clear. I mean, Jackson points this out in his 28-J. There has to be notice at the very least by the time of the 922-G conduct. So let's be clear. We are both asking for backward-looking inquiries. Jackson is asking for a backward-looking inquiry at the time of the 922-G offense. That is when you have notice. We are asking for a backward-looking inquiry, as McNeil says, at the time of the previous state conviction, because that is when, under this recidivist statute, the ACCA, that is when the defendant has demonstrated their dangerousness. That is what matters. Let me ask you this then. If there's any ambiguity here, and obviously if there's not ambiguity, then this doesn't come into play, but if there's ambiguity, why wouldn't the rule of lenity then require us to go with the interpretation that Mr. Adler is suggesting? Well, one, there is no ambiguity, and Smith 2014 actually says there is no ambiguity in this definition. But if there were ambiguity, the rule of lenity doesn't help us here because it cuts both ways, as we've talked about. If you have something that is added to the schedule later, then that hurts. Under Jackson's approach, that would hurt the defendant. Under our approach, it would be fairer, we think, that the defendant know the collateral consequences of their previous state conviction at the time that they commit that offense. And that makes sense under ACCA as well. This is a recidivist statute and the purpose of it is to deter future criminal conduct. We want them to know from the point that they commit those prior state convictions, moving forward, that you are not to possess a firearm. And if you do, you will face steep consequences, not the day before they do so. That is why this is a backward-looking inquiry and why McNeil defines it as such. Those other cases that Jackson advances in the guidelines context, he says it's a distinction without a difference. It's a distinction with a huge difference. The guidelines do not textually link to the changing federal schedules in 802. They do not textually do that. You know what does? The immigration statutes. The immigration statutes do. That language is the same as ACCA. It says as defined in section 802. And the way that courts look at the federal schedules there is to look at the federal schedules at the time of the previous state conviction. We should do the same in the ACCA context. The policy reasons, so in Bautista, the Ninth Circuit says that the reason they do that in immigration context is by the way they read the statute. So we should read it the same in the ACCA context and also the policy reasons. The policy reasons in the immigration context are the same here. We want defendants to know moving forward the collateral consequences of those previous state convictions. But I think we should go back a little bit because I don't think we have to even reach any of that. Again, the court is not writing on a blank slate here as my colleague from the Middle District so aptly pointed out. The issue in this case is whether cocaine-related convictions under 893.13 are serious drug offenses under ACCA. And at least two panels of this court have already decided that question in published decisions that are binding precedent, namely the Tooth Smith cases. We have held that the prior panel precedent rule only applies to holdings. We've also held that regardless of what opinions say, they can't extend beyond the facts of the case. And I don't know what the facts of that case, of those cases that the court focused on were. I guess the facts were known, but they weren't known. I can't see someone saying that, look, the court held in this previous case that the statute is constitutional. And the response being, yes, but it was only attacked on Sixth Amendment grounds. And we're now attacking it on due process grounds. And the response being, well, it doesn't matter. We said it's constitutional, so it's constitutional. And the result being, the law of the circuit rejects a claim that was never made. Well, I agree with Your Honor that a case and the prior panel rule can only extend so far as the issue presented in that case. But we get back to what Your Honor pointed out in the previous argument. It depends how you define the issue and the argument. We think the fairest way to define the issue in those two cases, the Tooth Smith cases, is whether the cocaine-related convictions under Florida law qualified as serious drug offenses. Now, the argument those defendants made as to why that wasn't so was because those didn't include a mens rea element. This court rejected that. But also, I mean, the holding of Smith says Section 893.1 of Florida statute is both a serious drug offense and a controlled substance offense. And that's the way this court has looked at the holding of Smith when it has applied it. Frazier and Gilbert, those cases, the defendants argued over breadth of the definition, not mens rea. And this court still held that it was bound by the first Smith 2014 and Smith 2020. Because the issue in that case was whether those convictions qualified as serious drug offenses. And the arguments brought forward in those cases were the mens rea. But the holding still is binding on the panel. And the prior panel still applies because the prior panel rule addresses this. There is no overlooked reason or overlooked argument exception to the prior panel rule. And for good reason. Because if there were, the prior panel rule and precedent would have no bite. Parties wouldn't follow. But Mr. Brenner, I mean, and Judge Carnes can certainly correct me if I'm misunderstanding. But I think the question here is, this is a different issue. It's not a different argument. And the prior precedent rule does not extend to different issues. Yes, and I agreed. That's the first thing. I agree that it doesn't extend to different issues. But we disagree on whether this is a different issue. It's the same issue. Do convictions under this Florida statute qualify as serious drug offenses? This court has addressed it multiple times. Now the arguments that are brought forward on those issues, yes, there are different arguments. And that argument, I agree. If you look at it the way that Jackson looks at it in the first Smith case, then his argument wouldn't have been available. Sure. Now, I don't agree that that's how you should measure it. Because in Smith 2014, you still would measure by looking at the federal schedule and the state schedule at that time. So that Smith 2014 would still apply here. But even if you looked at the way he looks at it, that argument was available in the second Smith case. This court cannot hold the way Jackson asks it to hold without ignoring its holding in those two cases. Depends on what the holding is. The problem with, and there's an issue that will stand way beyond this case about the prior precedent. The problem with your interpretation of the rule is that if there are four or five possible grounds for attacking a particular statute, different constitutional provisions, and the first defendant up attacks it on one ground, and the opinion discusses that ground and then closes with the so-and-so statute is not unconstitutional, period. The only way we can get the other four grounds addressed is to go en banc one, two, three, four times. That's not sensible. That just doesn't make for good appellate practice that you've got to panel member 13, I mean a senior panel member who elects 13 or 14 judges every time to address issues that haven't been addressed by anybody. That is a flaw that I can't imagine any judge who would have to sit on all those en banc panels thinking was a good expenditure of resources. Sure, we agree that if the issue wasn't addressed in a certain case then the panel rule shouldn't extend to that, but we disagree. Yeah, but the issue is the unconstitutionality under a particular provision. When y'all argue or raise or get a ruling in the district court that this violates the eighth amendment, we don't look to see if it also violates the due process clause or the sixth amendment. Ordinarily, we don't unless we give notice to the parties an opportunity for briefing and argument and that sort of thing, and even then we sometimes don't because it wasn't raised in the district court, but it just doesn't make sense to say every panel better make sure. Suppose this panel has said, now this is the issue, the one issue, the only issue we are addressing. Would your position be any different? Well, if the panel is making clear and if the issue is truly that narrow, then of course. It's not that narrow, it's the same issue that came up in Smith. And the panel had said, that's the issue, that's the only one we're addressing, we don't want to be misunderstood on this, we're not addressing anything else, we reject that argument. And insofar as that argument is concerned or that issue is concerned, the statute is constitutional. You'd be happy with that? If the panel reserves for a different day arguments that it is not addressing, sure, of course. My point to you is, as an appellate judge going up on three decades, we reserve everything we don't address. Sure, that's true. But when you do address an issue, the prior panel also makes clear that the issue you addressed and the holding of your case may not be circumvented by raising arguments that were not... There's a difference between an argument and issue. Let me give you a classic argument. The argument is this statute violates this and we hold no, it doesn't. And then in a future panel, they come up and say, that previous panel overlooked this argument, they overlooked this Supreme Court decision. Or my favorite, they misinterpreted that Supreme Court decision, which existed at that time. That's an overlooked argument, that's an argument that's been implicitly rejected, and that's an argument that will get you nowhere. Because otherwise, every single time the panel sits, you can say, oh, they overlooked this, they didn't think about that, they didn't consider this law review article, and so forth and so on. That's the difference. I hear your honor, the government's position is that what Jackson is doing now is raising a new argument on the same issue. And that issue being whether these convictions under this specific statute, cocaine related convictions under this specific Florida statute qualify as serious drug offenses. This court, when defendants have come forward with new arguments, not related to mens rea, but related to the overbreath of the definition as Jackson has done here, this court has held that the prior panel rule does apply, because Smith's holdings extend and foreclose these arguments, not just men rea. Thank you, and we will hear again from Mr. Adler. Thank you, your honor. So I guess I'd like to address the prior panel and then the merits, if I can. I can't improve much on anything Judge Karnes just said about the prior panel rule. I would just add that, as far as I'm aware, the court has never applied the prior panel in a situation like this one, where you have the main precedent for Smith 2014, the thing that's doing all the work that comes before a change in federal law that then gives rise to new legal theory. And then a subsequent case, Xavier Smith comes along, reaffirms the first precedent without mentioning that change in intervening change in law. As far as I can tell, that's never been foreclosed before by this court. And if it does, if the prior panel does apply, I think the court would have to address our procedural due process argument, which is fully brief. As for the merits, it sounds to me like the logic of the government's theory would mean that you apply not just the federal schedules in effect at the time of the prior, but the version of ACCA in effect at the time of the prior. And that can't be right. That would be inconsistent with this court's decision in Reynolds. And it would mean that pre-ACCA priors would not qualify. It would mean we'd still be applying the residual clause to prior convictions that were committed before the Supreme Court's decision in Johnson. That's not the way any court approaches these things. As for the guideline distinction, the fact that the guidelines don't actually expressly incorporate the federal schedules cuts in our favor, because in this context, it shows that Congress expressly did that, even though it has other contrasting definitions where it's doing something totally different. Third, the government, again, is talking about the notice of the consequences and the immigration context. And I just think there's a totally different viewpoint that you have to bring there because the consequences attach in the immigration context at the moment of the prior conviction. That's why we have Padilla versus Kentucky. That's why defense lawyers have to tell their clients, here's what's going to happen if you enter this plea. Here's maybe why you should go to trial. Enter a safe harbor plea. And we don't have that when you're talking about future sentencing consequences for something that hasn't occurred yet. The notice for ex post facto purposes occurs at the moment of the 922G offense is committed. That's what the court said in Reynolds. And so that's just a different context here. And then finally, on the rule of lenity, we didn't mention this, but we agree, Judge Roosevelt, to the extent there is any ambiguity here, I think the rule of lenity would have to cut in our favor. The rule of lenity applies to sentencing statutes, just like substantive criminal offenses. The Supreme Court in Johnson, obviously, invalidated the residual clause as void for vagueness. And the rule of lenity is known sometimes as a junior varsity version of vagueness. So to the extent there's any ambiguity, I'm not quite sure what that would be in this situation. I mean, the face of the statute is very clear. The Florida statute that I often paint is not covered. And the face of the federal schedules is very clear that I often paint is not covered anymore. And so, you know, I guess the only ambiguity would be in the 922 for 924 E2 A2. But I just don't see the ambiguity there. I think the parenthetical as defined in clause, I think it's neutral as the 10th. I don't think we're relying on that. We're relying on the default rule of federal sentencing. Judges apply federal law in effect at the time of sentencing. We're relying on the Congress's decision, the drafting decision, to expressly incorporate an evolving drug schedule when it had numerous other options at its disposal. And we're relying on the common sense that federal judges should not be imposed on 15-year mandatory minimums based on legal substances. If the court has no further questions, we ask that the court vacate Mr. Jackson's sentence and remand for resentencing without the active enhancement. Thank you. Thank you, counsel.